UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
***Electronically Filed***

| | |
|---|---|
| ANGEL'S SHARE BRANDS LLC<br><br>Plaintiff,<br><br>v.<br><br>TKC HOSPITALITY GROUP LLC d/b/a TRUE STORY WHISKEY<br><br>and<br><br>SAGA SPIRITS GROUP a/k/a TKC DISTILLING CO. LLC<br><br>Defendants. | **CIVIL ACTION NO.** 3:26CV-958-CHB<br><br>**COMPLAINT AND JURY DEMAND** |

## COMPLAINT AND JURY DEMAND

Plaintiff Angel's Share Brands LLC ("Plaintiff"), by their attorneys Stites & Harbison PLLC and Kelley Drye & Warren LLP, bring this action against Defendants TKC Hospitality Group LLC d/b/a True Story Whiskey and Saga Spirits Group a/k/a TKC Distilling Co. LLC (collectively "Defendants") and allege as follows:

## NATURE OF THE ACTION

1. This is an action for infringement of Plaintiff's federally-registered trademark for ANGEL'S ENVY under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), for unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), for trademark dilution under 15 U.S.C. § 1125(c), and for substantial and related claims of infringement, unfair competition, and unfair trade practices under the statutory and common laws of the Commonwealth of Kentucky, all arising from the Defendants' willful and pervasive

unauthorized use of the ANGEL'S ENVY Marks in connection with the marketing, advertising, promotion, offering for sale, and/or sale of Defendants' products.

2. Plaintiff seeks injunctive and monetary relief.

## THE PARTIES

3. Plaintiff is a limited liability company formed under the laws of the State of Florida with its registered seat located at 11211 Prosperity Farms Road, Suite 303C, Palm Beach Gardens, Florida 33410, and with its offices and distillery located at 500 E Main St, Louisville, Kentucky 40202.

4. Upon information and belief, Defendant TKC Hospitality Group LLC d/b/a/ True Story Whiskey is a Kentucky limited liability company with its principal place of business located at 230 Pisgah Pike, Versailles, KY 40383.

5. Upon information and belief, Defendant Saga Spirits Group a/k/a TKC Distilling Co. LLC is a Kentucky limited liability company with its principal place of business located at 11826 Ransum Dr., Unit 201, Louisville, KY 40243 and is the parent company of TKC Hospitality Group.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1332, and 1338, and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367 because the claims arising under the laws of the Commonwealth of Kentucky are so related to the federal claims alleged herein that they form part of the same case or controversy under Article III of the United States Constitution.

7. This Court also has subject matter jurisdiction over the entire case under 28 U.S.C. § 1331 because the causes of action at issue primarily raise a federal question.

8. This Court has personal jurisdiction over Defendants under KRS § 454.210 because Defendants have, upon information and belief: transacted business in the Commonwealth of Kentucky; contracted to supply goods in the Commonwealth of Kentucky; committed tortious acts or omissions causing an injury in the Commonwealth of Kentucky; and/or caused tortious injury in the Commonwealth of Kentucky by an act or omission, including but not limited to marketing products, outside the Commonwealth of Kentucky, which are used or consumed in Kentucky or regularly available for purchase in Kentucky, and because Defendants do or solicit business, or engage in other courses of conduct, or derive substantial revenue from goods used or consumed in Kentucky.

9. Venue is proper in the Western District of Kentucky pursuant to 28 U.S.C. § 1391 (b) and (c) because the claims alleged in the Complaint arose in this District, this Court has personal jurisdiction over Defendants in this District, and because Defendants may be found and/or reside in this District. Defendants are committing wrongful acts in Kentucky, engaging in interstate commerce, and have wrongfully caused Plaintiff substantial injury in the Commonwealth of Kentucky.

## STATEMENT OF FACTS

### ANGEL'S ENVY BRAND AND TRADEMARKS

10. ANGEL'S ENVY is a globally recognized and renowned brand that has been used by Plaintiff and its predecessors in interest for over a decade in the United States to promote and sell whiskey and related products.

11. Plaintiff sells and promotes goods and services bearing the ANGEL'S ENVY mark and brand within the Commonwealth of Kentucky and throughout the United States.

12. Plaintiff, Angel's Share Brands LLC, is the exclusive owner of all rights, title and interest in the business, brand assets, goodwill, contractual rights and intellectual property

associated with the ANGEL'S ENVY brand in the United States of America. In 2015, all parties who owned direct or indirect equity interests in Plaintiff, including Wesley Henderson ("Wes Henderson") and any Henderson family members, sold 100% of their ownership interests to a company that is affiliated with Bacardi Limited and its group of companies.

13. Neither Wes Henderson nor any member of the Henderson family have any current affiliation with the ANGEL'S ENVY brand or business, nor are they associated with Plaintiff or its products or services in any way.

14. Plaintiff is and has always been the exclusive owner of all rights associated with the ANGEL'S ENVY trademark, formulas, copyrights, and all other intellectual property associated with the ANGEL'S ENVY brand in the United States, including but not limited to U.S. Trademark Registration Nos. (a) 3,975,374 for the word mark ANGEL'S ENVY; (b) 4,269,960 for the design of the ANGEL'S ENVY bottle  ; (c) 4269961 for the product packaging design  ; and (d) 4,269,962 for the ANGEL'S ENVY Wings Logo: all in connection with bourbon (collectively, the "ANGEL'S ENVY Marks"). *See* **Exhibit 1.**

15. The ANGEL'S ENVY Marks have been used by Plaintiff from the time of its creation to promote and sell whiskey products in the United States of America since as early as 2011. In addition to its registered trademark rights, such use in U.S. commerce has conferred Plaintiff with common law trademark rights. Sales of products bearing the ANGEL'S ENVY

Marks have generated substantial revenue since the first sale of the products. For example, in the last three years alone, Plaintiff's sales in the United States of products bearing the ANGEL'S ENVY mark have generated net sales revenue of over $300 Million Dollars.

16. Plaintiff has expended substantial time, money and resources in connection with the marketing, advertising, and promotion of goods sold under the ANGEL'S ENVY Marks and related services, such as distillery visits. In the last three fiscal years alone, advertising and promotional expenditures for the brand in the United States have exceeded $90 Million. For example, the ANGEL'S ENVY Marks and products bearing the ANGEL'S ENVY Marks have been the subject of extensive advertising, marketing and promotional activities throughout the United States over the course of many years. These activities have included print and digital publications; outdoor and out-of-home advertising; television, video, streaming and other broadcast advertising; internet, digital, search, social media and other online advertising; websites, email and other digital and direct-to-consumer communications; retail and point-of-sale advertising, displays, merchandising and promotions; on-premise advertising, promotions and activations; consumer sampling, tastings and other experiential and consumer-engagement activities; brand ambassador, advocacy and education programs; sponsorships, partnerships and collaborations; trade shows and industry events; and consumer-facing activities at the ANGEL'S ENVY distillery. The ANGEL'S ENVY Marks have also been promoted through branded merchandise and promotional materials; new-product introductions, limited releases and other product-related promotional programs; public relations and media-relations activities; and engagement with distributors, retailers, bartenders, mixologists and other members of the beverage alcohol trade. In addition to these promotional efforts, the ANGEL'S ENVY Marks and products

bearing the marks have received extensive unsolicited media and press attention in the United States over the course of many years.

17. As a result of the longstanding exclusive use, extensive promotion, advertising and unsolicited publicity relating to the ANGEL'S ENVY Marks and products bearing the marks in the United States, U.S. consumers associate Plaintiff's ANGEL'S ENVY brand and products exclusively with Plaintiff (or an unidentified single source) and the ANGEL'S ENVY Marks have established a valuable reputation and have achieved enormous goodwill of great value to Plaintiff.

18. Plaintiff's ANGEL'S ENVY mark is distinctive to both the consuming public and the relevant trade. The ANGEL'S ENVY mark is widely recognized by the general consuming public of the U.S. as a designation indicating the source of goods or services and is famous pursuant to Section 43(c)(2) of the Lanham Act.

**DEFENDANTS AND THEIR INFRINGING CONDUCT**

19. In 2024, Wes Henderson and other Henderson family members launched True Story Whiskey ("TSW"), a whiskey and spirits brand based in Versailles, Kentucky.

20. Upon information and belief, the TSW branded whiskey products are marketed to the same target consumers as Plaintiff's products and are sold in the same channels of trade as Plaintiff's ANGEL'S ENVY branded products, including overlapping sales in some of the same retail stores. Since the TSW products are the same or related type of whiskey as the ANGEL'S ENVY products, they are also likely to be sold in close proximity to Plaintiff's products in retail store locations.

21. Upon information and belief, TSW products are bottled by Saga Spirits Group, a limited liability company based in Louisville, Kentucky that is the parent company of Defendant TKC Hospitality Group LLC.

22. In June 2025, Wes Henderson was sued in a civil lawsuit in Oldham County, Kentucky, brought by his daughter-in-law, alleging hidden-camera voyeurism and alleged invasion of privacy in connection with his alleged recording with hidden cameras of nude individuals of varying ages in the acts of changing, going to the bathroom, and/or having sex, at properties owned by Wes Henderson.

23. These serious allegations against Mr. Henderson have resulted in significant negative media attention. *See e.g.* Janet Patton, *Bourbon maker accused of secretly filming guests having sex, including at Kentucky Castle*, LEXINGTON HERALD LEADER (Oct. 5, 2026), https://www.kentucky.com/lexgoeat/bourbon/article317442089.html#storylink=cpy; *see also* David Morrow, *Founder of One of Kentucky's Most Famous Bourbon Brands Sued By Family Members Over Allegedly Filming Guests Having Sex*, THE DAILY POUR (Oct. 2, 2026), https://thedailypour.com/whiskey/bourbon/wes-henderson-bourbon-founder-sued-filming-sex/; *see also* Angela Barbuti, *Kentucky bourbon maker accused by family members of secretly filming them having sex: lawsuit*, NEW YORK POST (Oct. 3, 2026), https://nypost.com/2026/10/03/us-news/kentucky-bourbon-maker-accused-by-family-members-of-secretly-filming-them-having-sex-lawsuit/; *see also* Caroline Neal and Ruby Grisin, *Wes Henderson, Angel's Envy co-founder, named in voyeurism lawsuit*, COURIER JOURNAL (Oct. 5, 2026), https://www.courier-journal.com/story/news/local/kentucky/2026/10/05/wes-henderson-lawsuit-updates-angels-envy-kentucky-castle/92103820007/?gnt-cfr=1&gca-cat=p&gca-uir=true&gca-epti=z114701p003250l001450c003250e1184xxv114701d--xx--b--xx--&gca-ft=197&gca-ds=sophi.

24. Wes Henderson was reportedly terminated as CEO of Defendant TKC Hospitality Group LLC shortly after the commencement of the lawsuit in October 2026 but, according to its

attorney, Wes Henderson remains a board member and majority shareholder of Defendant TKC Hospitality Group LLC through present-day.

25. Wes Henderson's name and image remain prominently displayed on nearly all promotional and sales materials associated with the TSW brand, including on its website, social media accounts, and point of sale marketing materials.

26. While Defendants have no affiliation with or connection to Plaintiff or the ANGEL'S ENVY brand, nearly all of the marketing and promotional materials used to promote and sell the TSW products also prominently display the ANGEL'S ENVY registered trademark without Plaintiff's authorization.

27. Defendants' prominent and ubiquitous use of the ANGEL'S ENVY trademark to promote its products is clearly intended to improperly trade off the goodwill of the ANGEL'S ENVY mark, in which Defendants, Wes Henderson, and the Henderson family members own no interest, and is likely to cause consumers to falsely believe that Defendants and their products are associated with Plaintiff and/or the ANGEL'S ENVY brand.

28. For example, Defendants prominently and repeatedly display Plaintiff's ANGEL'S ENVY trademark on its social media accounts, digital and physical point of sale materials, including shelf talkers, bottleneck tags, and large promotional banners and signage displayed where the TSW products are sold. Examples of such uses are depicted below:


FROM THE FOUNDER OF ANGEL'S ENVY
A STORY IN EVERY BOTTLE.
TRUE STORY
FINISHED RYE
TRUE STORY
FINISHED BOURBON
$71.99
$61.99


TRUE
S
TRUE
S
TRUE
S
$57.99
$67.99
ORY
TRUE STORY
FROM THE FOUNDER OF ANGEL'S ENVY®
"PULL UP A CHAIR"
TRUE STORY
SHERRY CASKS







29. As shown below, the homepage of TSW's website located at https://truestorywhiskey.com/ ("TSW Website")[1], which is a vehicle to promote and sell Defendants' competitive whiskey products, display the ANGEL'S ENVY trademark in large banner that displays the ANGEL'S ENVY trademark in larger and more predominant manner than the TRUE STORY WHISKEY brand name.

[1] True Story Whiskey, https://truestorywhiskey.com/ (last visited Nov. 17, 2026).




30. The "Our Story" page on the TSW Website located at https://truestorywhiskey.com/our-story/[2] includes an unauthorized hyperlink to the homepage of Plaintiff's official ANGEL'S ENVY website (https://www.angelsenvy.com/us/en/)[3] that is likely to cause consumers to falsely believe that the source of the TSW products is the same as the source of the ANGEL'S ENVY products, or that there is some association between Defendants and their products and Plaintiff's ANGEL'S ENVY brand.




31. The same page of the TSW Website includes a large image of Plaintiff's ANGEL'S ENVY product, packaging, logo, and brand name, overlaid with a timeline of the "Henderson

---

[2] True Story Whiskey, https://truestorywhiskey.com/our-story/ (last visited Nov. 17, 2026).

[3] Angel's Envy, https://www.angelsenvy.com/us/en/ (last visited Nov. 17, 2026).

Family Tradition" of making whiskey products. See https://truestorywhiskey.com/our-story/ and image below.




32. Defendants' conduct is clearly intended to unfairly trade on the enormous goodwill associated with the ANGEL'S ENVY brand, in which Plaintiff owns all rights, in order to promote Defendants and their products.

33. In addition, given the recent negative press surrounding Wes Henderson related to the lawsuit filed by his daughter-in-law alleging, among other deeply troubling things, that Wes Henderson used hidden cameras to secretly film guests of his residences having sex, changing clothes and using bathrooms, including recordings of potential minors while they were nude, Defendants' use of the ANGEL'S ENVY Marks, many of which are displayed together with Wes Henderson's name and image, is likely to damage the value of the ANGEL'S ENVY Marks and brand and tarnish the famous ANGEL'S ENVY mark. *See e.g.* Janet Patton, *Bourbon maker accused of secretly filming guests having sex, including at Kentucky Castle*, LEXINGTON HERALD LEADER (Oct. 5, 2026),

https://www.kentucky.com/lexgoeat/bourbon/article317442089.html#storylink=cpy; *see also* Leigh Egan, *Kentucky bourbon CEO fired after lawsuit alleges hidden cameras recording family members, minors nude: reports*, FOX NEWS (Oct. 6, 2026), https://www.foxnews.com/us/kentucky-bourbon-ceo-fired-lawsuit-alleges-hidden-cameras-recording-family-members-minors-nude-reports?msockid=015c9792189d661e3867806e196f6724.

34. Indeed, after the lawsuit was filed against Wes Henderson, Defendants themselves announced that he was removed as CEO of the company. *See e.g.* WKYT News Staff, *Kentucky Castle terminates CEO following voyeurism lawsuit*; WKYT (Oct. 3, 2026), https://www.wkyt.com/2026/10/03/kentucky-castle-terminates-ceo-following-voyeurism-lawsuit/; *see also* David Morrow, *Prominent bourbon maker Wes Henderson fired as Kentucky Castle CEO amid voyeurism lawsuit*, THE DAILY POUR (Oct. 5, 2026), https://thedailypour.com/whiskey/bourbon/wes-henderson-fired-kentucky-castle/.

35. This action demonstrates that the negative media attention was perceived by Defendants themselves as harmful or potentially harmful to Defendants' own brand.

36. Defendants' unauthorized and ubiquitous use of the ANGEL'S ENVY Marks to promote its own products is falsely leading consumers to believe that Wes Henderson and the TSW brand are currently associated with Plaintiff and its products, and is causing direct harm to Plaintiff and its business, particularly given the negative press associated with the allegations of wrongdoing by Wes Henderson. For example, a number of Plaintiff's wholesale customers have cancelled purchases of Plaintiff's ANGEL'S ENVY product due to concern about the negative press associated with Wes Henderson, explaining that media outlets and consumers continue to make an association between Wes Henderson and the ANGEL'S ENVY brand. Organizers of

planned events to promote Plaintiff's ANGEL'S ENVY products have also cancelled Plaintiff's participation given the negative press associated with Wes Henderson. Customers at events where the ANGEL'S ENVY product was featured have also expressed concern about Wes Henderson and his alleged improper conduct because they believe he is currently associated with the ANGEL'S ENVY brand.

37. On October 6, 2026, Plaintiff's counsel sent a cease-and-desist letter to Defendants objecting to Defendants' infringing use of Plaintiff's ANGEL'S ENVY Marks. Attached hereto as **Exhibit 2** is a true and correct copy of Plaintiff's counsel's cease and desist letter to Defendants.

38. To date, Defendants have not complied with Plaintiff's requests to cease use of the ANGEL'S ENVY Marks, and they have refused or failed to respond to subsequent correspondence.

39. Defendants' infringing and improper acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the public as to the source or origin of the Defendants' goods and have and are likely to deceive the relevant public into believing, mistakenly, that Defendants' competing and related goods originate from, are associated or affiliated with, or otherwise sponsored, endorsed, or authorized by Plaintiff.

40. Defendants' acts as alleged herein are likely to dilute the ANGEL'S ENVY mark as a source designation for Plaintiff's products and tarnish the reputation of the famous ANGEL'S ENVY mark.

41. Upon information and belief, Defendants' acts are willful and have been conducted with the deliberate intent for the purpose of trading on the goodwill and reputation of the ANGEL'S ENVY brand, to cause confusion and deception in the marketplace, and to divert potential sales of Plaintiff's goods to the Defendants.

42. Defendants' acts are causing and, unless restrained, will continue to cause damage and immediate irreparable harm to Plaintiff and to its valuable reputation and goodwill with the consuming public for which Plaintiff has no adequate remedy at law.

**COUNT I**
**Willful Federal Trademark Infringement**

43. Plaintiff incorporates by reference and restates all prior paragraphs as if fully set forth herein.

44. Defendants are using Plaintiff's registered ANGEL'S ENVY Marks without Plaintiff's authorization.

45. Defendants' unauthorized use in commerce of Plaintiff's ANGEL'S ENVY Marks as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' goods, and is likely to cause consumers to believe, contrary to fact, that Defendants' goods are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants are in some way affiliated with or sponsored by Plaintiff.

46. Defendants' conduct therefore constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

47. Defendants have committed the foregoing acts of infringement with full knowledge of Plaintiff's existing rights in the ANGEL'S ENVY Marks and with the willful intent to cause confusion and trade on Plaintiff's goodwill in the business associated with the ANGEL'S ENVY Marks.

48. Defendants' conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court.

49. Plaintiff has no adequate remedy at law.

50. Plaintiff has suffered damages and will continue to suffer damages as a result of Defendants' infringement in an amount to be proven at trial that is not presently ascertainable but will be established at trial and, at minimum, exceeds $75,000, exclusive of interest and costs.

51. Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

52. The Court should further find that this is an exceptional case under 15 U.S.C. § 1117 and award Plaintiff damages and attorneys' fees.

**COUNT II**
**Federal Unfair Competition**

53. Plaintiff incorporates by reference and restates all prior paragraphs as if fully set forth herein.

54. Defendants' unauthorized use in commerce of Plaintiff's registered ANGEL'S ENVY Marks is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' goods, and is likely to cause consumers to believe, contrary to fact, that Defendants' goods are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants are in some way affiliated with or sponsored by Plaintiff.

55. Defendants' conduct therefore constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

56. Defendants' unauthorized use in commerce of Plaintiff's ANGEL'S ENVY Marks further constitutes use of a false designation of origin and misleading description and representation of fact.

57. Defendants' conduct is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants, Wes Henderson and the Henderson family with the ANGEL'S ENVY Marks and brand.

58. Defendants' conduct is causing immediate and irreparable harm and injury to Plaintiff, and to Plaintiff's goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this Court.

59. Plaintiff has no adequate remedy at law.

60. Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT III
## Trademark Dilution

61. Plaintiff incorporates by reference and restates all prior paragraphs as if fully set forth herein.

62. Plaintiff owns the distinctive ANGEL'S ENVY mark, which is the subject of U.S. Trademark Registration No. 3,975,374.

63. Plaintiff and its predecessors in interest have used the ANGEL'S ENVY mark in commerce for goods since 2011.

64. Plaintiff's ANGEL'S ENVY Mark is famous within the meaning of 15 U.S.C. § 1125(c) and acquired such fame prior to Defendants' first unauthorized use of the mark.

65. The general consuming public of the United States widely recognizes Plaintiff's ANGEL'S ENVY mark as identifying Plaintiff as the source of its goods and services, resulting

from more than 15 years of worldwide use, millions of dollars of annual sales, and extensive unsolicited media coverage.

66. Plaintiff's ANGEL'S ENVY mark was famous before Defendants first infringed upon the Mark.

67. Defendants' use of Plaintiff's ANGEL'S ENVY marks is likely to cause dilution by blurring and tarnishment under 15 U.S.C. § 1125(c).

68. Defendants' use in commerce of the ANGEL'S ENVY mark, without Plaintiff's consent, is likely to cause confusion, competition, cause mistake, and/or deceive consumers into mistakenly believing that Defendants, Wes Henderson and the Henderson family are affiliated with Plaintiff and the ANGEL'S ENVY mark, or that Defendants are licensees, authorized distributors, or affiliates of Plaintiff, or that Defendants, their activities, and/or/ its products, are authorized, endorsed, sponsored, or approved by Plaintiff, or vice versa.

69. Defendants' infringing use is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court.

70. Plaintiff has no adequate remedy at law.

71. This is so regardless of any likelihood of confusion, competition, or actual economic injury.

72. Defendants acted willfully and knew of the famous ANGEL'S ENVY mark and engaged in the conduct alleged herein with the intention to trade on its recognition and harm its reputation.

73. Plaintiff is entitled to injunctive relief under 15 U.S.C. §§ 1116, 1117 and 1125(c)(1).

74. Since Defendants' dilution is willful, Plaintiff is also entitled to Defendants' profits, damages, costs, and attorneys' fees under 15 U.S.C. § 1116(a), §§ 1117(a) and 1125(c)(5).

**COUNT IV**
**Trademark Infringement (Kentucky Common Law)**

75. Plaintiff incorporates by reference and restates all prior paragraphs as if fully set forth herein.

76. Plaintiff owns rights in ANGEL'S ENVY Marks by virtue of use of the same within the Commonwealth of Kentucky before Defendants' infringing use commenced.

77. Defendants' use in commerce of the ANGEL'S ENVY Marks, without Plaintiff's consent, is likely to cause confusion, cause mistake, and/or deceive consumers into mistakenly believing that Defendants are affiliated with Plaintiff, or that Defendants are licensees, authorized distributors, or affiliates of Plaintiff, or that Defendants, their activities, and/or their products, are authorized, endorsed, sponsored, or approved by Plaintiff, or vice versa.

78. Upon information and belief, Defendants have made, and will continue to make, profits and gain from their unauthorized use of the ANGEL'S ENVY Marks, to which they are not entitled in law or equity.

79. Upon information and belief, Defendants' wrongful conduct alleged in the foregoing paragraphs is intentional, willful, conducted in bad faith, and with the intention of deceiving and misleading the public and causing harm to Plaintiff.

80. Upon information and belief, Defendants' acts and conduct complained of herein constitute trademark infringement in violation of the common law of the Commonwealth of Kentucky.

81. Defendants' trademark infringement has caused and will continue to cause Plaintiff to suffer damages in an amount that is not presently ascertainable but will be established at trial, and, at minimum, exceeds $75,000, exclusive of interest and costs.

82. Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to damage Plaintiff and confuse the public unless enjoined by this Court.

83. Plaintiff has no adequate remedy at law.

84. Plaintiff is entitled to, among other relief, injunctive relief, actual damages, Defendants' profits, punitive and exemplary damages under KRS §§ 367.170, 367.220, and KRS § 411.184(2), reasonable attorneys' fees, and costs of the action.

**COUNT V**
**Unfair Competition (Kentucky Common Law)**

85. Plaintiff incorporates by reference and restates all prior paragraphs as if fully set forth herein.

86. Defendants have unfairly profited by using in the United States, including the Commonwealth of Kentucky, Plaintiff's ANGEL'S ENVY Marks in such a way that exploits Plaintiff's goodwill.

87. By using Plaintiff's ANGEL'S ENVY Marks, Defendants have unfairly taken Plaintiff's business and impaired Plaintiff's goodwill.

88. Defendants' unauthorized use of the ANGEL'S ENVY Marks has caused, and will likely continue to cause, confusion in the United States, including in the Commonwealth of Kentucky.

89. Defendants' unauthorized use of the ANGEL'S ENVY Marks constitutes false designation of origin, false or misleading description of fact, and false or misleading representation

of fact, and has caused and is likely to continue to cause confusion, mistake, and deception as to the origin, source, sponsorship, or affiliation of Defendants' goods with Plaintiff.

90. Defendants' actions violate KRS § 367.170.

91. Defendants have committed unfair competition under the common law of Kentucky.

92. Upon information and belief, Defendants' acts as alleged herein are intentional and willful violations of Plaintiff's intellectual property rights.

93. Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to damage Plaintiff and confuse the public unless enjoined by this Court.

94. Plaintiff has no adequate remedy at law.

95. Plaintiff is entitled to, among other relief, injunctive relief, actual damages, Defendants' profits, punitive and exemplary damages under KRS §§ 367.170, 367.220, and KRS § 411.184(2), reasonable attorneys' fees, and costs of the action.

## COUNT VI
## Unfair Trade Practices (Kentucky)

96. Plaintiff incorporates by reference and restates all prior paragraphs as if fully set forth herein.

97. By adopting Plaintiff's name and ANGEL'S ENVY Marks without authorization, Defendants have used a false brand on the sale, offer of sale, marketing, and promotion of Defendants' Goods.

98. Pursuant to KRS §§ 365.100 and 365.110, Defendants have committed unfair trade practices under laws of the Commonwealth of Kentucky.

99. Defendants' conduct is willful and intends to deceive the purchasers of Plaintiff's Goods, and, as direct competitors, Defendants directly compete for the same purchasers.

100. Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to damage Plaintiff and confuse the public unless enjoined by this Court.

101. Plaintiff has no adequate remedy at law.

102. Plaintiff is entitled to, among other relief, injunctive relief, actual damages, Defendants' profits, punitive and exemplary damages under KRS §§ 365.100, 365.110, KRS § 411.184(2), and KRS § 446.070, reasonable attorneys' fees, and costs of the action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

1. Finding that Defendants committed acts of trademark infringement, trademark dilution, unfair competition, and unfair trade practices as alleged in this Complaint;

2. Entering judgment against Defendants and in favor of Plaintiff on all counts;

3. Finding that Defendants' activities were in all respects conducted willfully and for profit;

4. Ordering that Defendants, their officers, agents, servants, employees and attorneys, and those in active concert or participation with them or any of them, be permanently enjoined and restrained from:

a) Using Plaintiff's ANGEL'S ENVY Marks in any manner whatsoever, including but not limited to display on Defendants' webpages, social media profiles, packaging and other promotional materials including, without limitation, items for use and/or display in stores, bars, restaurants, clubs and in general on media and in venues accessible to consumers;

b) Using or mentioning Plaintiff's ANGEL'S ENVY Marks or brand in any media interviews, press releases, social media, packaging and other promotional materials for the TSW brand and products including, without limitation, items for use and/or display in stores, bars, restaurants, clubs and in general on media and in venues accessible to consumers;

c) Representing, suggesting in any fashion to any third party, or performing any act that may give rise to the belief that Defendants, or any of their goods, are authorized by Plaintiff;

d) Passing off, inducing, or enabling others to sell or pass off any goods as products produced by Plaintiff, which are not in fact genuine, or not produced under the control and supervision or approved by Plaintiff; and

e) Competing unfairly with Plaintiff in any manner.

5. Ordering Defendants under 15 U.S.C. § 1116(a) to file with the Court and serve upon Plaintiffs within thirty (30) days of the entry of injunction prayed for herein, a written report under oath or affirmed under penalty of perjury setting forth in detail the form and manner in which it has complied with the permanent injunction;

6. Ordering Defendants to deliver up to Plaintiff for destruction, any and all instructions, advertisements, or products that relate to the infringement as complained of herein, including the said instructions, advertisements, or products that Defendants have distributed in the market, directly or through third-party distributors;

7. Ordering Defendants under 15 U.S.C. § 1117 to account to Plaintiff for any and all profits derived by them in connection with the use or infringement of the ANGEL'S ENVY Marks

and that Defendants disgorge any such profits and pay all damages sustained by Plaintiff by reason of Defendants' actions complained herein;

8. Awarding Plaintiff's costs and attorney fees;

9. Awarding punitive damages against the Defendants pursuant to KRS § 411.184(2) and KRS § 446.070;

10. Awarding Plaintiff both pre-judgment and post-judgment interest on each and every damage award;

11. Declaring that this is an exceptional case pursuant to Section 35(a) of the Lanham Act and awarding Plaintiff its costs and reasonable attorneys' fees under 15 U.S.C. § 1117(a);

12. Finding under 15 U.S.C. § 1117 that Defendants' conduct has been willful, and awarding Plaintiffs reasonable attorney's fees, costs, and disbursements of this civil action; and

13. Awarding any other damages or relief that this Court deems just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury in this action.

Dated: November 18, 2026

*/s/ Jeffrey S. Moad*
Joel T. Beres
Jeffrey S. Moad
**STITES & HARBISON PLLC**
400 West Market Street, Suite 1800
Louisville, KY 40202-3352
Tel: (502) 681-0324
jberes@stites.com
jmoad@stites.com

Andrea L. Calvaruso *(pro hac vice forthcoming)*
Steven Thomas *(pro hac vice forthcoming)*
**KELLEY DRYE & WARREN LLP**
3 World Trade Center
175 Greenwich Street
New York, New York 10007
Tel: (212) 808-7853
ACalvaruso@KelleyDrye.com
SThomas@KelleyDrye.com

*Attorneys for Plaintiff`*
*Angel's Share Brands LLC*